UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
JOSEPH CORSO,

                Plaintiff,

      -against-

MARK FRANZ,

                Defendant.

-------------------------------------------------x

**MEMORANDUM AND ORDER**
16-CV-2384 (FB) (SMG)

*Appearances:*
*For the Plaintiff:*
SETH GINSBERG, ESQ.
299 Broadway, Suite 1405
New York, New York 10007

*For the Defendant:*
PATRICK McINERNEY, ESQ.
MICHAEL SEITZ, ESQ.
Spencer Fane LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106

**BLOCK, Senior District Judge:**

      The defendant moves to dismiss this case for lack of subject-matter jurisdiction, lack of personal jurisdiction, and improper venue. *See* Fed. R. Civ. P. 12(b)(1-3). In the alternative, he asks the Court to transfer the case to the District of Kansas pursuant to 28 U.S.C. § 1404(a). For the following reasons, the Court concludes that venue is improper and, in its discretion, transfers the case to the District of Kansas. Accordingly, the Court does not address the defendant's other grounds for dismissal or transfer. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway to choose among threshold grounds for

denying audience to a case on the merits.").

# I

Practice on a motion under Rule 12(b)(3) is relatively straight-forward. All well-pleaded allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits. A district court may examine facts outside the complaint to determine whether its venue is proper. And, as is consistent with practice in other contexts, such as construing the complaint, the court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff.

5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1352 (3d ed. 2004) (footnotes omitted). The following facts are presented with those standards in mind.

## A. Background

The allegations of the complaint recount the story of a bad investment. In 2007, the plaintiff, Joseph Corso, purchased and foreclosed a debt owed by GMD LLC, a business owned by the defendant, Mark Franz. Corso and Franz eventually agreed to transfer GMD's assets into a new company, Global Medical Direct LLC ("Global"). Like GMD before it, Global sold durable medical equipment. Its primary market was diabetics covered by Medicare, Medicaid, or private insurance.

In 2009, Franz and others formed Midwest Medical Services, Inc. ("Midwest"), which directly competed with Global. Franz held a 47.5% interest in Midwest, but concealed his involvement through a strawman. Between 2009 and 2011, Franz

2

diverted $10 million in profits from Global to Midwest. To conceal the diversion, Frank prepared fraudulent financial statements and tax returns for Global, and sent them by mail and fax to Corso.

In 2011, Franz executed a promissory note acknowledging that Corso was owed a total of $12 million. He then arranged to have Midwest buy out its strawman owner and redistributed ownership of both Midwest and Global to himself, Corso, and an unnamed individual in equal shares. Franz continued to operate both companies.

Between 2009 and 2012, Franz used Global and Midwest to carry out several schemes without Corso's knowledge. The companies paid kickbacks for customer referrals and filled orders without a physician's determination that the equipment was medically necessary. Both practices are forbidden under Medicare and Medicaid regulations, resulting in millions of false billings. Franz also had Global submit fraudulent claims to private insurance companies. He then prepared financial statements and tax returns reflecting income from the unlawful schemes, and sent those documents by mail and fax to Corso.

The Department of Justice eventually investigated Global and Midwest. As a result of the investigation, Global's receivables and other assets were sold to Concordia Healthcare USA, Inc. With DOJ's approval, Concordia agreed to satisfy part of the $12 million note held by Corso with a $4.2 million note of its own. However, Concordia's note gave it the right to offset any amounts subject to

indemnification. Concordia has claimed that a large portion of Global's receivables were subject to claims resulting from Corso's schemes. It has asserted a $1.2 million offset and withheld all payments on the note.

Corso sued Franz in 2016. His complaint claims violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO") and, in addition, asserts state-law claims for fraud, breach of contract, breach of fiduciary duty and unjust enrichment.

## B. Facts Relevant to Venue

It is undisputed that Corso is a resident of New York, Franz is a resident of Kansas, and Global and Midwest were Kansas companies. In an affidavit submitted with his motion to dismiss, Franz elaborates that Global's headquarters, employees, bankers, insurers and suppliers were based in Kansas (or nearby Kansas City, Missouri), and that Midwest's principal place of business was also there.

According to the complaint, both companies had customers and offered kickbacks for referrals throughout the United States, including in New York. The complaint further alleges that Franz sent fraudulent financial statements and tax returns to Corso in New York.

## II

"To survive a Rule 12(b)(3) motion to dismiss, the plaintiff has the burden of pleading venue." *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 447 (E.D.N.Y. 2013). Because the Court is assessing venue based only on the complaint and Franz's

affidavit, the burden is "only [to] make a prima facie showing of venue." *Id.* (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005)).

The complaint alleges that venue is proper here because "a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and Franz transacted his affairs related to this action in this district." Compl. ¶ 10. That language invokes two statutes: 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b)(2). The Court addresses each in turn.

## A.  18 U.S.C. § 1965(a)

The first statute is RICO's special venue provision. It provides that "[a]ny civil action or proceeding under [RICO] against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a).

Corso relies exclusively on the "transacts his affairs" prong. Courts have taken that language to mean the same thing as "transacts business" under the Clayton Act's venue provision, upon which § 1965(a) was based. *See City of New York v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526, 541-42 (S.D.N.Y. 2005) (citing *King v. Vesco*, 342 F. Supp. 120, 124 (N.D. Cal. 1972)).[1] The Clayton Act requires that the business be of a

---

[1]"Transacting business" under the Clayton Act "is co-extensive with the test for personal jurisdiction under New York CPLR § 302." *Bulk Oil (USA) Inc. v. Sun Oil Trading Co.*, 584 F. Supp. 36, 40 (S.D.N.Y. 1983) (quoting *Agra Chem. Distrib. Co. v. Marion Labs., Inc.*, 523 F. Supp. 699, 702 (W.D.N.Y. 1981)). That

"substantial character." *Eastman Kodak Co. v. S. Photo Materials Co.*, 273 U.S. 359, 372 (1927); *see also Daniel v. Am. Bd. of Emergency Med.*, 988 F. Supp. 127, 257 (W.D.N.Y. 1997) ("The Supreme Court and lower courts have interpreted the statute to require, for proper venue, some amount of business continuity and certainly more than a few isolated and peripheral contacts with the particular judicial district."). By extension, § 1965(a) requires that the affairs transacted in the district be substantial. *See Gates v. Wilkinson*, 2003 WL 21297296, at *1 (S.D.N.Y. June 4, 2003) (quoting *Daniel*).

Corso bases venue on his allegations—which are taken as true at this stage—(1) that Franz sent him letters and faxes in this district, and (2) that Global and Midwest had customers here, some of whom were obtained through the illegal kickback scheme. With respect to the former, the Court agrees with its colleague that "[o]ccasional acts such as telephoning or mailing letters into a state are not sufficient to constitute 'transacting affairs' under 18 U.S.C. § 1965(a)." *Fernando v. Fernando*,

_____

parallel led Judge Batts to opine that "it is the policy in this Circuit to conflate personal jurisdiction and venue by reading the RICO venue provision to permit adjudication in any district where minimum contacts are established." *Cyco.Net*, 383 F. Supp. 2d at 544. Corso takes this to mean that venue is proper under § 1965(a) whenever the usual test for minimum contacts is satisfied. To the contrary, Judge Batts held that § 1965(a) alters the test for minimum contacts in RICO cases. After reciting the "general" definition of minimum contacts, she explained that "[t]o establish minimum contacts under RICO, *however*, Plaintiff need only prove one of the four factors listed in 18 U.S.C. § 1965(a)." *Id.* at 541 (emphasis added).

2010 WL 3119729, at *10 (E.D.N.Y. Aug. 5, 2010) (Matsumoto, J.); *see also Pincione v. D'Alfonso*, 2011 WL 4089885, at *5 (S.D.N.Y. Sept. 13, 2011) ("Pincione fielded dozens of phone calls, emails, and other messages from several Defendants concerning their business deal . . . . While the Defendants apparently had steady contact with Pincione in New York throughout January, these contacts do not rise to the level required by RICO."), *aff'd*, 506 F. App'x 22 (2d Cir. Dec. 20, 2012); *Now Plastics, Inc. v. HPT Plastics, Inc.*, 1990 WL 301521, at *3 (S.D.N.Y. Apr. 10, 1990) ("Occasional acts such as telephoning or mailing letters into the district . . . have been held to be insufficient to meet this test.").

With respect to the latter, it is an open question whether § 1965(a) automatically attributes a corporation's affairs to its employees or principals. *Compare Bulk Oil (USA) Inc. v. Sun Oil Trading Co.*, 584 F. Supp. 36, 39 (S.D.N.Y. 1983) ("[The language of § 1965(a) suggests to us that it is the personal affairs of the defendant that are to be considered not affairs he may have transacted on behalf of his employer."), *with Now Plastics*, 1990 WL 301521, at *3 n.7 ("Of course, in situations in which the employer is essentially a vehicle for the activities of the individual, such as a 'one man firm,' it may be possible to 'pierce the corporate veil' and attribute the individual's activity on behalf of his company to him personally."). It is clear, however, that "venue under § 1965(a) requires that a defendant transact his affairs in the district at the time the complaint is filed." *Gates*, 2003 WL 21297296, at *2 (citing cases). The

complaint, filed in 2016, acknowledges that Franz's role in Global or Midwest ended years earlier:

> As part of the resolution with the Department of Justice, the DOJ required either the immediate liquidation and/or sale of Global Medical Direct to a third party to be approved by the DOJ and the removal of Franz from further participation in the durable medical equipment and supply business, as well as any other business that requires Medicare of Medicaid participation.

Compl. ¶ 71. The sale of Global took place in 2013. *See id.* ¶ 72. Whatever Franz's level of control over Global had been prior to the sale, he was no longer "transact[ing] his affairs" through the company when the complaint was filed.

## 28 U.S.C. § 1391(b)

As an alternative to § 1965(a), Corso invokes 28 U.S.C. § 1391(b), the general venue statute. *See Cyco.Net*, 383 F. Supp. 2d at 544 ("[The plaintiff in a civil RICO action] may properly lay venue in accordance with either 18 U.S.C. [§] 1965 or 28 U.S.C. [§] 1391."). As pertinent here, that statute confers venue in any district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2).[2]

---

[2] In addition, the statute authorizes venue in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," *id.* § 1391(b)(1), and "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action,"

Assessing venue under § 1391(b)(2) entails a two-party inquiry: "First, a court should identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005) (citing *Gulf Ins. Co.*, 417 F.3d at 357). "Second, the court should determine whether a substantial part of those acts or omissions occurred in the district where suit was filed[.]" *Id.*

In conducting that inquiry, the Second Circuit has "caution[ed] district courts to take seriously the adjective 'substantial,'" *Gulf Ins. Co.*, 417 F.3d at 357:

> That means for venue to be proper, significant events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere. It would be error, for instance, to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries.

*Id.* In addition, the inquiry "require[s] courts to focus on relevant activities of the defendant, not of the plaintiff." *Daniel*, 428 F.3d at 432 (quoting *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995)).

Corso posits that the essence of his claim is the mail and wire fraud Franz allegedly perpetrated in furtherance of his schemes. The Court disagrees. Corso's complaint, in substance, is that Franz diverted profits from Global to Midwest and had the companies offer illegal kickbacks and submit false insurance claims, all of which

---

*id.* § 1391(b)(3). Subsections (1) and (3) are not applicable in this case.

eroded Corso's ownership interest in Global, and all of which occurred in Kansas. The documents Franz allegedly sent to Corso simply made it harder for Corso to discover what was happening to that interest.

To be sure, the alleged mail fraud and wire fraud are *necessary* parts of Corso's RICO claims. But there are any number of "necessary link[s] in the chain of events" giving rise to a plaintiff's claims. *Micromem Techs., Inc. v. Dreifus Assocs. Ltd.*, 2015 WL 8375190, at *6 (S.D.N.Y. Dec. 8, 2015). If each link were sufficient to confer venue, there would be no need to "take seriously the adjective 'substantial.'" *Gulf Ins. Co.*, 417 F.3d at 357. Moreover, these links in particular focus more on Corso than on Franz. To base venue on them would not be in keeping with *Daniel*'s directive to "focus on relevant activities of the defendant, not of the plaintiff." 428 F.3d at 432.

## III

In sum, Corso has not made a prima facie showing of venue under either § 1965(a) or § 1391(b)(2). When venue is improper, the district court has discretion to "dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a); *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993) ("Whether dismissal or transfer is appropriate lies within the sound discretion of the district court."). Since Franz concedes both that venue is proper in the District of Kansas and that he is subject to personal jurisdiction there, the Court exercises its discretion to transfer the case to the District of Kansas

in lieu of dismissal.

**SO ORDERED.**

_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 27, 2018